MISSISSIPPI VALLEY TRUST COMPANY v. MCDONALD et al., *Appellants.*

146 467
152 39

Division One, December 8, 1898.

1. **Records:** MISTAKE IN DEED: NOTICE. One who buys land, against which there is a recorded deed of trust, is chargeable with notice of the contents thereof; and, if it is apparent on the face of the deed that there is a mistake in one of its recitals, he is chargeable also with notice of what that mistake is.

2. ———: ———: ———: AMOUNT OF NOTE. Where a deed of trust recited that the grantor was indebted to the beneficiary "in the sum of $3,750 in seven promissory negotiable notes," "to wit, one principal note for $1,350" and "six interest notes for $112.50 each," a purchaser of the land subject to this incumbrance, is chargeable with notice that there is a mistake in the recital as to the amount of the principal note. And when he receives a deed of purchase for five lots, each of the same size and all together constituting one residence property, there being at the time of record a deed of trust against the other four of said lots, each for $3,750 and six interest notes of $112.50, and it is recited in his deed that all the lots are conveyed subject to an incumbrance of $18,750. he will be charged with notice that the recital in the particular deed of trust of "one principal note for "$1,350," was intended to describe "a principal note for $3,750."

Trust Co. v. McDonald.

3. ———: ———: ———: ———: SUBSEQUENT PURCHASER. And a subsequent vendee from such purchaser will be chargeable with like notice.

4. ———: ———: ———: ———: REMEDY. And a suit in equity to reform the deed of trust and to foreclose the same, will be upheld.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Lubke & Muench* for appellants.

(1) The trial court erred in refusing to dismiss the petition on the ground that no case for equitable relief was made out. There was no allegation or proof to show that McDonald, the maker of the note which plaintiff seeks to have incorporated into a deed of trust, is insolvent. His testimony was that he is engaged in the real estate business at St. Louis as a member of the co-partnership of McDonald & Ryan. The case is much more than a mere foreclosure suit. Primarily its object is to alter a written instrument on the ground of mistake, and to establish a lien for purchase money. In such a case the petitioner has no option as to his remedy, he must go into a court of equity and take his chances under the rules of equity. The action to foreclose given by the statute is not in equity, but is a proceeding at law. *Smith v. Finn*, 77 Mo. 499; *Mason v. Barnard*, 36 Mo. 384; *Riley v. McCord*, 24 Mo. 265; *Fithian v. Monks*, 43 Mo. 502; *Nolan v. Brewster*, 17 Mo. App. 497; *Woolfolk v. Kemper*, 31 Mo. App. 423; *Merry v. Freman*, 44 Mo. 521; *Alnutt v. Leper*, 48 Mo. 320; *Humphrey v. Atlantic Milling Co.*, 98 Mo. 542; *Thias v. Siener*, 103 Mo. 314; *Crim v. Walker*, 79 Mo. 335. (2) There was no specific allegation charging, and no proof was adduced to show that Haeussler and Stickfort prior to the commence-

ment of this action had any notice of the equities which plaintiff now asserts.   It is clear, therefore, that as to these two defendants, the petition should have been dismissed.   The recital in the deed of trust under which plaintiff claims, is not sufficient to affect any of the defendants with notice.   The recital is in no wise ambiguous.   Its logical and natural meaning is that although the debt for purchase money is $3,750, the creditor has taken a lien only for the two years' interest to accrue on that, and for $1,350 of the principal; and that for this interest and $1,350 of the principal, specific notes have been taken.   *Briscoe v. Callahan*, 77 Mo. 134; *Emison v. Whittlesey*, 55 Mo. 254; *Orrick v. Durham*, 79 Mo. 174; *Boyer v. Austin*, 75 Mo. 81. The rule as to notice from recitals in a conveyance is, that only such notice will be inferred as would naturally come from a reading of the recital.   Hence, the language used in this deed simply and only advised defendants that Florida had waived a lien for all except the two years' interest, and $1,350 of the principal. *Melcher v. Durkem*, 44 Mo. App. 650.   (3) There was no evidence to show that plaintiff gave anything for the $3,750 note. *Leach v. McFadden*, 110 Mo. 584; *Banking House v. Rood*, 132 Mo. 256; *Hollmann v. Lange*, 143 Mo. 100.   (4)   There was an entire want of evidence to connect, or to fit the $3,750 note to the particular deed of trust now sought to be changed by this suit.   There were five principal notes of like tenor and amount, with two sets of interest notes.   Of these five principal notes, four were paid. There was no evidence to show that the fifth one belongs to this particular deed of trust.   And under these conditions, a court of equity can not help the plaintiff.   It will not grant relief based on conjecture, surmise or possibility.   In the case at bar the court can only conjecture that the note in question went with this particular deed of trust.

*Moore v. Railroad*, 28 Mo. App. 622. (5) The letter
written by Sommerville to Boucher, dated January 24,
1894, does not affect Sommerville's position before the
court. It was written long after his purchase from
Barr. (6) The acceptance by plaintiff from Mc-
Donald and Florida of the new deed of trust for $3,750
after the discovery of the error now claimed, operated
to waive plaintiff's claim, asserted by this suit. This
new deed of trust bears a new date, and the notes given
therewith bear a different date. They in nowise refer
to the old deed of trust, and plaintiff has retained as
his own this new deed of trust and the notes given
therewith to this date. The waiver of the prior lien or
claim is complete in law although the new security
proves valueless. *Boyer v. Austin*, 75 Mo. 81.

*Kehr & Tittmann* for respondent.

(1) The power of a court of equity to reform a
written instrument on the ground of mistake is unques-
tioned. *Leitensdorfer v. Delphy*, 15 Mo. 160; *Hooks
Adm'r v. Craighead*, 32 Mo. 405; *Schwickerath v. Cook-
sey*, 53 Mo. 75; *Cassidy v. Metcalf*, 66 Mo. 519; *Martin
v. Nixon*, 92 Mo. 26; *Corrigan v. Tierney*, 100 Mo. 276;
*Dodson v. Lomax*, 113 Mo. 555; *Thompson v. Thompson*,
115 Mo. 56; *Barlow v. Elliott*, 56 Mo. App. 374; *Hoyt
v. Oliver*, 59 Mo. 188. (2) Where a court of equity
obtains jurisdiction of a cause for any purpose it will
retain jurisdiction to do full and complete justice be-
tween parties. *Real Est. Sav. Inst. v. Collonious*, 63
Mo. 290; *Edmonson v. Phillips*, 73 Mo. 57; *Holloway
v. Holloway*, 97 Mo. 630; *Woodward v. Mastin*, 106
Mo. 324; *Reyburn v. Mitchell*, 106 Mo. 365; *Morrison
v. Harrington*, 120 Mo. 665. (3) The statutory rem-
edy is not exclusive. A mortgage or deed of trust may
be foreclosed by bill in equity. *Riley v. McCord*, 24
Mo. 265; *Wolff v. Ward*, 104 Mo. 127; *Rubey v. Coal*

& M. Co., 21 Mo. App. 159; McQuie v. Peay, 58 Mo. 56; 2 R. S. 1889, secs. 7078 and 7079. (4) The mistake in the description of the principal note, secured by the deed of trust, appears: (a) From the recital of the deed itself. (b) Conclusively from the proof offered at the trial; and, (c) was so found by the court below. Rawlins v. Rawlins, 102 Mo. 563; Gottschalk v. Kircher, 109 Mo. 170; Bartlett v. Brown, 121 Mo. 353. (5) The defendants Haeussler and Stickfort claim under Sommersville. They are made defendants by reason of their interest in the property which accrued subsequent to plaintiff's deed of trust. They are made parties to bind them by the decree and for no other purpose. They made no defense other than that made by the grantor of Sommersville. (6) The defendants Sommersville, Haeussler and Stickfort bought with full notice by the record of the facts that plaintiff's deed of trust secures $3,750 and interest. The claim that vendor waived security for $2,400 of the purchase money and took security only for $1,350 and the interest on $3,750 is too transparently shallow to invite credence. The court below found the fact against the defendants. (7) Having proved the execution of the notes and Florida's indorsement and delivery of them, the plaintiff, who produced the notes and deed of trust in court, established its title to them. The indorsement is presumed to be for value. The evidence showed and the court found the $3,750 produced by plaintiff to be the note secured by the deed of trust. Aull v. Lee, 61 Mo. 160.

BRACE, P. J.—This is an action to reform and foreclose a deed of trust. The facts in the case as shown by the evidence, are substantially as follows:

On the tenth day of October, 1892, the defendant McDonald, being indebted to A. K. Florida in the

sum of $18,750, for part of the purchase money for a lot of ground in block 913 in the city of St. Louis, fronting eighty-four feet six inches on the north line of Market street, to secure the payment of same, divided the lot into five equal parts, each fronting sixteen feet ten inches on the north line of Market street, and the indebtedness into five equal payments of $3,750 each, for which he executed five several principal notes each for the sum of $3,750, payable three years after date, and six notes each for $112.50 for the semi-annual interest on each of said principal notes, and executed five separate deeds of trust each on one of the distinct parcels aforesaid, to secure the payment of one of the said principal promissory notes, and its interest notes. All the notes were payable to A. K. Florida and on the same day were delivered to him, and in due course of business, negotiated, indorsed and delivered to the plaintiff trust company, and thereafter on the twelfth day of October, 1892, the five deeds of trust were duly recorded. The said McDonald was also on the fourteenth day of October, 1892, indebted to the said Florida in the further sum of $5,500 of the purchase money for said lot of ground fronting eighty-four feet six inches on Market street, for which he on that day executed another principal promissory note for that amount with notes for the semi-annual interest thereon. To secure the payment thereof, on the same day he executed a second deed of trust on the whole of said lot of ground subject to the five deeds of trust aforesaid, which was also duly recorded on the twelfth day of October, 1892. This deed of trust and the notes secured thereby passed into other hands. The subjecting clause therein is as follows: "This deed is made subject to five deeds of trust of even date herewith for the sum of $3,750 each payable in three years

after date with interest at the rate of six per cent per annum, payable semi-annually."

The indebtedness secured by the first five deeds of trust and notes given therefor were correctly recited in all of said deeds, except one, in which the recital was as follows:

"Whereas, the said John R. McDonald, for a part of the purchase money for the property hereinbefore described, is justly indebted unto the said party of the third part in and to the amount of thirty-seven hundred and fifty dollars in seven promissory negotiable notes bearing even date herewith and made payable to the order of said A. K. Florida, described and payable as follows, to wit:   One principal note for the sum of *thirteen hundred and fifty* dollars, payable in three years after date.   Six interest notes for the sum of $112.50 each payable respectively in six, twelve, eighteen, twenty-four, thirty and thirty-six months after date. All of the above notes to bear interest at the rate of eight per cent per annum from maturity."

·  The error in the recital of the amount of the principal note therein coming to the knowledge of the plaintiff sometime after, upon its suggestion, another deed of trust of like tenor, except that the amount of the principal note was correctly recited therein to be $3,750 was executed by McDonald, making no reference, however, to the former deed of trust.   This second deed of trust to secure this $3,750 indebtedness was dated January 7, 1893, and recorded the same day. In regard to this deed of trust Mr. Breckenridge Jones, plaintiff's vice-president, but then secretary of the company, testifies as follows:

"When we found this discrepancy in the deed of trust, I made an effort to have that corrected and have McDonald sign a new deed of trust for the same amount on the same property; which, when found correct, and

found to be a first lien—as we had understood the first one to be—was to take the place of the first deed of trust. . He delivered it to us, we holding it as collateral until the certificate could be run down to find out whether it were a first deed of trust, as the first one had been. When that examination was made, we found that between the time, October 10, the date of the first deed of trust, and, I think, January 7, the date of the second deed of trust, which was intended to take its place, a deed of trust for $5,500, I think it was, had been put on the property. So we refused then to accept the second deed of trust in payment or in cancellation of the first, but held it as collateral to the first, and in order to show that there had been an error in the first, as acknowledged by the parties in interest. And after that we handed Florida the letter, a copy of which I have here, saying that the two deeds of trust represented but one debt."

Afterwards, on the twenty-ninth day of April, 1893, Frank A. Barr, who seems to have been the owner of the equity of redemption, by general warranty deed of that date, in which his wife joined, conveyed the said lot of ground fronting eighty-four feet six inches on Market street to the defendant William Sommersville, for the recited consideration of $45,000, the deed reciting, "The above property being conveyed subject to incumbrances aggregating twenty-eight thousand dollars."

Afterwards on the twenty-first day of February, 1894, the $5,500 deed of trust on the whole ground was foreclosed by sale and the defendant Sommersville became the purchaser thereof for the sum of $3,100, and received the trustee's deed therefor of the same date. In regard to this sale Sommersville wrote the trustee the following letter:

"St. Louis, Mo., January 24, 1894.
"*J. V. Boucher, Esq.*

"Dear Sir:—In reply to your call of this day, notifying me of sale of Market street property on the deed of trust which names you as trustee—My abstract shows that this trust is on all the property, and subject only to $3,750 each on the five numbers or houses. Please sell this way securing lowest cost for advertising and any expenses.

"Yours truly, W. Sommersville."

And in the advertisement of the sale, which was dated January 27, 1894, appears the following statement: "This sale will be made subject to five deeds of trust of $3,750 each, as recited in the deed first herein mentioned."

There was also parol evidence tending to prove that notice was given at the sale that the deed of trust in question was for $3,750, and that there had been a clerical error in describing the note as $1,350 instead of $3,750, and that Sommersville heard the announcement.

After his purchase, Sommersville paid the whole of four of the five principal notes secured severally by the five deeds of trust, together with the interest notes thereon, as aforesaid, paid all the interest notes of the fifth deed of trust and tendered to the plaintiff $1,350 in payment of the fifth principal note. The tender was refused, and the plaintiff brought this suit, charging in its petition the material facts aforesaid, and alleging in addition "that the said defendant Sommersville executed a deed of trust dated the fourteenth day of October, 1895, and recorded in the recorder's office of said city of St. Louis, in book 1293, page 380, by which he conveyed the premises to the defendant Herman A. Haeussler in trust to secure to the defendant John A. Stickfort, the payment of the debt in said

deed recited and defendants Haeussler and Stickfort claim an interest in the property by virtue of their said deed of trust."

The defendant McDonald made no answer and the decree as to him was by default. He was examined as a witness and testified in substance, that each of the five principal notes for which the five deeds of trust were given, was for $3,750; that he wrote the deeds of trust, and by mistake wrote $1,350 instead of $3,750 in the deed of trust sued on.

The defendants Sommersville, Haeussler and Stickfort answered jointly, admitting that Sommersville now owns the real estate in the petition described, and that defendants Haeussler and Stickfort hold a deed of trust thereon made by Sommersville, but denying all the other allegations of the petition.

The decree of the court adjudged that the deed of trust in question "be reformed by eliminating the misdescription of the principal note which it secures, and that said note for thirty-seven hundred and fifty dollars, dated October 10, 1892, payable three years after its date to the order of said A. K. Florida, and by him indorsed to and now held by the plaintiff, be deemed and taken to be the note which is secured by said deed, and that said deed stands as security for its payment, on which the court finds there is due on this twentieth day of June, 1896, the sum of $3,958.33."

The decree then gave defendants thirty days in which to pay plaintiff the said $3,750 and interest, together with the costs of this suit, and provided that in default of such payment by the defendants, said deed of trust be foreclosed by a sale thereunder, to be made by the sheriff of the city of St. Louis, and that the proceeds of such sale be applied to the payment of the said debt, interest and costs of said sale and costs

of this suit, the surplus of such proceeds to be paid to appellant, Sommersville.

From the decree Sommersville, Haeussler and Stickfort appeal. ·

When Sommersville acquired title from Barr and wife on the twenty-ninth of April, 1893, whatever that title was, the deed of trust in controversy was spread upon the land records of the city of St. Louis and he was charged with notice of the contents thereof. It was apparent on the face of the deed that there was a mistake in the recital, and what that mistake was. It was apparent that the indebtedness intended to be secured thereby was $3,750, that it was evidenced by seven promissory notes, one for the principal of the indebtedness, the other six for the interest to accrue thereon, until maturity. That from the amount of these interest notes and the time they ran, the amount of the principal note must be $3,750, and the rate of interest thereon six per cent. An ordinarily intelligent man upon reading this record would conclude from its terms, if he had his wits about him, and was paying attention to what he was reading, that the principal note secured by the deed of trust was for $3,750, and that the insertion of the sum of $1,350 in the recital as its amount was a mistake, and an ordinarily prudent man, if he did not act upon such conclusion, would at least enter upon diligent inquiry to ascertain whether such was not the fact before purchasing the property. The only excuse Sommerville gives on the witness stand for not doing so, is that he relied upon a certificate of title furnished by Mr. Gehner, before his purchase from Barr, in which this deed of trust was reported as one for $1,350. This, of course, is no legal excuse for not knowing the contents of the record of the instrument, or for not making such inquiry. But the excuse itself seems very bald and unworthy

even of moral consideration, in view of the fact that he then and there accepted the deed of Barr, in which the incumbrances on the property were recited to be $28,000, which they could not have been unless this deed of trust was for $3,750, the incumbrances consisting of

The five deeds of trust for $3,750 each........................... $18,750
The blanket deed of trust . . .. ........ ..........................  5,500
The deed of trust of January 7, 1893................. ...........  3,750

Total . . . ....... .. ....................................$28,000

The true amount of the indebtedness and the true amount of the note given therefor to secure which this fifth deed of trust was executed, was $3,750, and the record thereof and his own deed were sufficient to advise him of that fact, or at the very least to put him on such inquiry as would have brought actual knowledge of that fact home to him. Nevertheless he further testifies that the first intimation given him by anyone that the deed of trust involved in the case at bar was claimed to be for $3,750 was when he tendered payment of $1,350 in October, 1895, after he had paid all the interest notes in this deed of trust, and all the notes, both principal and interest of the other five deeds of trust, and this in face of the fact that the deed of trust for $5,500 under which he bought on the 21st of February, 1894, advised him that the five deeds of trust to which it was made subject, were of even date therewith, each for the sum of $3,750, payable in three years with six per cent interest, payable semi-annually, and of his own letter to Boucher, of January 24, 1894, stating, "My abstract shows that this trust is on all the property and subject only to $3,750 each on the five numbers of houses, please sell in this way," and of the advertisement of the same made in pursuance of his direction in which notice was given as directed that the sale would be made subject to the

five deeds of trust of $3,750, recited in the deed of trust under which it was to be sold. In face of these unimpeachable facts, to say nothing about the notice given at the sale, the testimony of Sommersville in regard to notice is incredible and wholly unworthy of belief.

The mistake in the description of the principal note in the fifth deed of trust, the one now in question, appears from the recital in the deed of trust itself, and is conclusively shown by the evidence. And from the evidence the chancellor could not have escaped the conclusion that both of Sommersville's purchases were made with notice of that mistake. In answer to the several objections urged for the reversal of the decree, we deem it only necessary to say, that no personal judgment was sought against any of the defendants. The object of the suit was to reform and foreclose the deed of trust simply. The solvency or insolvency of McDonald cut no figure in the case. That a court of equity has power to reform a written instrument on the ground of mistake; and when it obtains jurisdiction for any purpose will retain such jurisdiction to do full and complete justice between the parties, is beyond question. It is also well settled law that the statutory remedy of foreclosure is not exclusive, but that a mortgage or deed of trust may in a proper case, such as this, be foreclosed in equity. *Wolff v. Ward*, 104 Mo. 127; *McQuie v. Peay*, 58 Mo. 56; *Rubey v. Coal & Mining Co.*, 21 Mo. App. 159. The petition therefore stated good ground for the equitable relief sought and given by the decree.

On appeal in equity cases a decree will not be reversed on the ground that the trial court admitted incompetent evidence. Such evidence will be rejected here, and the case decided on the legitimate evidence in the case outside of that objected to, which was

sufficient in this case to warrant the chancellor in finding
that the unpaid principal note of $3,750 was acquired
by the plaintiff in good faith, for value, before ma-
turity, and that it was the note intended to be, and
that was secured by the fifth deed of trust which was
sought to be foreclosed. The fact that it was not
shown what the plaintiff paid for the note is imma-
terial.   The qualified acceptance of the deed of trust
under the circumstances and for the purpose testified
to by Mr. Jones did not operate as a discharge of the
indebtedness or a waiver of the lien of the deed for
the correction of which it was alone executed.

Counsel for appellants further contend that the
petition should have been dismissed as to the defend-
ants Haeussler and Stickfort, on the ground that there
was no proof adduced showing that they had any no-
tice of plaintiff's equities.   It is true it was alleged in
the petition that the defendant Sommersville, by a cer-
tain deed executed and recorded on the fourteenth of
October, 1895, conveyed the premises to Haeussler in
trust to secure the payment of a debt to Stickfort, and
that they claim an interest in the property by virtue
thereof.   They were named as parties defendant and
duly served, and were thus afforded an opportunity to
set up any claim they might have as a defense to
plaintiff's action.   They set up no claim and no inde-
pendent defense thereto, but simply joined with Som-
mersville in the answer denying the allegations of the
petition, admitting *only* that they held *a* deed of trust
on the premises made by Sommersville, but claiming
no interest under the same, and introducing no evi-
dence whatever on the trial showing any interest in
the premises.   It is evident that they stood and in-
tended to stand simply on Sommersville's defense, and
to abide its issue, and when the notice of plain-
tiff's equity imparted to them by the record itself of

Sommersville's title is considered, it is difficult to see what claim they could have set up that would have defeated plaintiff's action, although the evidence of notice to them of such equities was not quite as conclusive as was the evidence of notice to Sommersville. It is sufficient, however, and they ought to be bound by the decree, which is a just and righteous one, and is affirmed.

All concur.