NODAWAY COUNTY v. CHARLES C. ALUMBAUGH and MAUDE ALUMBAUGH, his wife, LENA B. RUSH, and CLYDE ROBERTS, Defendants; CHARLES C. ALUMBAUGH, and MAUDE ALUMBAUGH, his wife, Appellants.—153 S. W. (2d) 74.

Division One, July 3, 1941.

Rehearing Denied, July 25, 1941.

*Earl C. Borchers* and *John P. Randolph* for appellant.

356

*A. F. Harvey* and *Wright & Ford* for respondent.

BRADLEY, C.—Action to foreclose a school fund mortgage. The trial court entered a decree of foreclosure and defendants, Charles C. Alumbaugh and wife, appealed.

The real estate involved is the south half of lots 7 and 8, block 22, town of Barnard, Nodaway County. November 1, 1920, Frank Alumbaugh and his wife, Laura, then owners of the property, borrowed $500 at 6% from the county school fund, and to secure the loan, gave a school fund mortgage on the property and also the usual bond. Frank Alumbaugh paid the interest to January 1, 1929, but no part of the principal. Laura Alumbaugh died in 1924, and Frank died in April, 1929. Thereafter, his estate paid the interest on the loan to January 1, 1930. Defendant, Charles C. Alumbaugh, is a son of Frank and Laura, and inherited an interest in the property, and on September 5, 1931, acquired by deed the interest of the other heirs. In November, 1936, the county court took steps to foreclose the school fund mortgage, and on December 11, 1936, foreclosure sale was made by the sheriff. Defendant, Lena B. Rush, was the purchaser at the foreclosure sale on a bid of $77.50, which she paid to the sheriff, who executed and delivered to her a deed which was duly recorded. All of the $77.50 was credited on the school fund loan under date of

"Dec. 1936." Mrs. Rush, by her tenant, went into possession of the property and made repairs.

Thereafter, defendant, Charles C. Alumbaugh, brought suit against Mrs. Rush and her husband to determine title to the property and in ejectment. Mrs. Rush relied on her school fund mortgage foreclosure deed. The cause went on change of venue from Nodaway County to Caldwell County, and on July 1, 1937, was decided in favor of Charles C. Alumbaugh. The court found that the notice of the school fund mortgage foreclosure sale was "void and of no effect and that the sheriff's deed issued in pursuance thereof was void and transferred . . . no right, title or interest in and to said real estate." And it was further found "that under the evidence and the pleadings of plaintiff and defendants that defendant Lena B. Rush is entitled to have and recover of plaintiff the sum of one hundred seventy-seven dollars and thirty-nine cents ($177.39) for monies paid out and expended for the purported purchase price of said real estate and repairs and labor as the improvements on said real estate," and it was so adjudged. And it was further adjudged that Charles C. Alumbaugh "be subrogated to the right of the defendant, Lena B. Rush, to the recovery of said alleged purchase price paid by the said defendant, Lena B. Rush."

The present cause was filed June 10, 1938, and went on change of venue to Andrew County, and was decided November 13, 1939. Plaintiff county, in the petition to foreclose, took cognizance of the interest payments made by Frank Alumbaugh during his life, and the interest payment made by his estate, but did not mention the credit of $77.50 paid by defendant, Lena B. Rush, on her bid at the foreclosure sale and credited on the school fund loan. Nor did plaintiff county make any reference in its petition to foreclose to the foreclosure theretofore attempted, except to allege that Mrs. Rush "appears of record to have some claim or interest in or to said real estate" by virtue of a deed recorded "in book 227 at page 128 of the deed records of Nodaway County, Missouri, and which conveyance plaintiff says is absolutely void and has been so adjudged by a good and sufficient judgment and decree." The deed referred to was the deed executed by the sheriff to Mrs. Rush upon the foreclosure sale.

In the present case, Charles C. Alumbaugh and his wife, Maude, answered separately. Maude denied generally and alleged that Charles C. was the owner of the property concerned. Defendants, Lena B. Rush and Clyde Roberts, a tenant, did not answer. Defendant, Charles C. Alumbaugh, in his answer, among other things, pleaded the decree in his suit against the Rushes, adjudging title to be in him. He also pleaded that plaintiff county, by receiving the $77.50 paid by Mrs. Rush, and by failing to refund said amount to her or to him "is estopped in equity and in justice from further pursuing said cause."

Allowing credit for the interest payments made by the borrower

and his estate, and also the $77.50, the court found that there was a balance of $796.75 due on the school fund loan; that Lena B. Rush had no interest in the property; that Charles C. Alumbaugh was the owner, subject to the school fund mortgage, and, as stated, foreclosure decree was entered.

In the brief appellants say that the controversy is "around the question as to whether or not there can be a second foreclosure of the same mortgage and sale of the same property covered thereunder in satisfaction of the same debt." We might first say that no debt was *satisfied*. As supporting the contention that there can be only *one* foreclosure of a mortgage, defendants cite Buford et al. v. Smith, 7 Mo. 490, and Greene County Bank v. Chapman, 134 Mo. 427, 35 S. W. 1150. In the Buford case the mortgage secured two notes, due in one and two years respectively. Foreclosure was had for nonpayment of the one year note and defendant Henderson was the purchaser at the foreclosure sale. Default was made in the payment of the two year note and the holder sought a decree of foreclosure for nonpayment of that note and in the petition for foreclosure named, as defendants, the mortgagor and the purchaser at the first foreclosure sale. It was held that a second foreclosure could not be had where the whole of the mortgaged premises have previously been sold in satisfaction of a part of the debt. The Greene County Bank case, supra, was in ejectment. In that case the court cited the Buford case, and quoted from 26 Am. & Eng. Ency. of Law, 896, as follows: "If the entire mortgaged premises are sold upon default in payment of a portion of the debt, the power (of sale) is thereby exhausted, and the property cannot be sold again upon nonpayment of installments subsequently accruing."

There is nothing in the Buford and Greene County Bank cases that would prevent, in all circumstances, a subsequent foreclosure where a previous attempted foreclosure is void. It was held in Lanier v. McIntosh et al., 117 Mo. 508, 23 S. W. 787, that an ineffectual foreclosure does not exhaust the power of sale contained in a mortgage.

The real question here is, What are the equities between plaintiff county and Charles C. Alumbaugh? In Honaker et al. v. Shough, 55 Mo. 472, plaintiffs claimed the land, two 80 acre tracts in Holt County, subject to a dower interest which the defendant acquired by purchase. Plaintiffs were the heirs of Henry and Mary J. Honaker. Henry owned the land and prior to his death he and his wife, Mary J., gave a school fund mortgage on one of the tracts to secure a school fund loan. Mary J. survived her husband and sold her dower interest in both tracts to defendant. The school fund mortgage was foreclosed and defendant purchased at the sale. Defendant claimed to be the owner of the fee in the tract purchased at the school fund mortgage foreclosure, and sought to offer in evidence the school fund mortgage and the sheriff's deed upon foreclosure. These were excluded because

of certain defects in the order of the county court to foreclose. On appeal it was assumed that the school fund loan was paid in full from the proceeds of defendant's bid at the foreclosure sale, and assuming such to be so, this court held that the sale did not vest the legal title to the mortgaged land in defendant, but did transfer "the rights of the county to the defendant;" that he "became in equity entitled to the mortgage debt." Jones v. Mack, 53 Mo. 147, holds to the same effect. However, in an attempted foreclosure where the money bid does not discharge the mortgage debt in full, the purchaser is not subrogated to the whole of the mortgage debt, but only pro tanto. [Wells v. Lincoln County, 80 Mo. 424.] The Wells case involved a school fund mortgage foreclosure sale made "at a regular term of the county court" instead of the circuit court. In that case the court, speaking of the Honaker case, supra, said (80 Mo. l. c. 430) : "It appears clearly that the foreclosure sale there fully satisfied the mortgage debt. Hence, it is that Judge ADAMS said : 'If the money raised by this sale was paid to the county, as we must presume it was, it extinguished the debt due to the county, or, more properly speaking, it transferred the right of the county to the defendant. He thereby, in equity, became entitled to the mortgage debt.' "

42 C. J., p. 243, on the subject of a resale under a mortgage, says : "When the first purchaser is without fault, upon a resale he should be fully indemnified for all costs and expenditures incurred by reason of the first sale." Mrs. Rush, the purchaser at the foreclosure sale, certainly was not at fault, but since the money paid by her on her bid did not pay the school fund loan in full, she became subrogated to the security of the mortgage only to the extent of her bid. Charles C. Alumbaugh, by virtue of the judgment in his suit against the Rushes, stands in the shoes of Mrs. Rush as to her pro tanto interest in the mortgage debt.

Section 3447, R. S. 1939, 3 Ann. Stat., sec. 3060, p. 1890, authorizes foreclosure of mortgages in excess of $50 by suit against the mortgagor, and such suits, unless some question for a court of equity arises, are at law. [Brannock v. Jaynes, 197 Mo. App. 150, 193 S. W. 51; Northern Finance Corp. et al. v. Forked Leaf White Oak Lumber Co. (Mo. App.), 262 S. W. 437.] However, the statutory foreclosure is not exclusive, and foreclosure may be had in a court of equity. [Mississippi Valley Trust Co. v. McDonald et al., 146 Mo. 467, 48 S. W. 483; State ex rel. Wyandotte Lodge, etc., v. Evans et al., 176 Mo. 310, 75 S. W. 914.] The present cause is on the equity side of the court not only because of the equity questions raised, but because the statute provides for a foreclosure suit "against the mortgagor," and the mortgagor in the mortgage concerned here is dead.

When a court of equity is rightfully possessed of a case, it will not relinquish jurisdiction "short of doing complete justice." [Rock Hill Tennis Club v. Volker, 331 Mo. 947, 56 S. W. (2d) 9, l. c. 20,

and cases there cited; Selle v. Selle et al., 337 Mo. 1234, 88 S. W. (2d) 877, l. c. 883.] Plaintiff county is entitled to a decree of foreclosure, provided it offers to do justice respecting the $77.50 paid by Mrs. Rush on her bid at the foreclosure sale, and plaintiff, as stated, makes no reference in its petition to the $77.50. Charles C. Alumbaugh owes no part of the school fund debt; and as stated, stands in the shoes of Mrs. Rush as to the $77.50. The judgment should be reversed and the cause remanded and plaintiff county given permission to amend its petition, if it so desires, by offering to pay to Alumbaugh $77.50, plus interest at 6% from December 11, 1936, date of the foreclosure sale by the sheriff. If such offer is made, the court will enter a decree of foreclosure conditioned upon the payment to Alumbaugh, as stated. If plaintiff does not desire to so amend, then the court will dismiss the petition to foreclose. It is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.

### ON MOTION FOR REHEARING.

BRADLEY, C.— ▮ Appellants' motion for rehearing says that the opinion does not dispose of the matter of "the rent money collected by the receiver appointed by the trial court pending a final disposition of this case." There is nothing in the record before us to show that a receiver was appointed. In the petition for foreclosure plaintiff county alleged that it was necessary "that a receiver be appointed to take charge of said property and collect the rents and impound the same in order that they may be applied on the indebtedness so secured by the lien of said mortgage as aforesaid, otherwise said county will lose the same, to the loss and detriment of the school fund of said county." And, in the prayer, plaintiff asked for such receiver.

In his answer, Charles C. Alumbaugh alleged that plaintiff was not entitled to have a receiver appointed. Such is all that appears in the record before us about a receiver or rent money. July 21, 1940, appellants filed here a certified copy of an order of the circuit court (under date of July 8, 1938) reciting that the sheriff was appointed "receiver to take charge of and rent the real estate (here involved) and to collect the rents until such time as there shall be made further orders in the premises and preserve and hold said rents until such time, and maintain insurance on said real estate."

Manifestly the matter of "the rent money collected by the receiver" is not properly before us. If there is rent money collected by a receiver, the question of disposition will be for the trial court. No such question is before us under the present record.

The motion for rehearing should be overruled, and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.